<u>**NOT FOR PUBLICATION**</u>

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY

<table>
<tr><td> </td><td>:</td><td> </td></tr>
<tr><td>IN RE:</td><td>:</td><td>CHAPTER 7</td></tr>
<tr><td> </td><td>:</td><td> </td></tr>
<tr><td>KATHLEEN J. GANIM ,</td><td>:</td><td> </td></tr>
<tr><td> </td><td>:</td><td>CASE NO.:    06-10762 (NLW)</td></tr>
<tr><td> </td><td>:</td><td> </td></tr>
<tr><td>Debtor.</td><td>:</td><td> </td></tr>
<tr><td> </td><td>:</td><td> </td></tr>
</table>

**FILED**
JAMES J. WALDRON, CLERK

March 21, 2007

U.S. BANKRUPTCY COURT
NEWARK, N.J.
BY: /s/Diana Reaves, Deputy

**Before:    HON. NOVALYN L. WINFIELD**

**A P P E A R A N C E S :**

Dean G. Sutton, Esq.
18 Green Road
Post Office Box 187
Sparta, NJ 07871
Counsel for Debtor

James D'Alessandro, Esq.
Muscarella, Bochet, Edwards, et al
The Vanguard Building
21-00 Route 208 South
Fair Lawn, NJ 07410
Counsel for Trustee

Mario Serra, Jr., Esq.
Fein, Such, Kahn & Shepard, PC
7 Century Drive, Suite 2101
Parsippany, NJ 07054
Counsel for Washington Mutual Bank, FA

Matthew M. Fredericks, Esq.
David Kessler & Associates, LLC
1373 Broad Street
Clifton, NJ 07013
Counsel for 429 Gregory Associates, LLC

This matter is before the Court on the Debtor's motion to reimpose the stay and vacate the Court's earlier order which granted relief from the automatic stay to the Debtor's mortgagee. The purpose of the Debtor's motion is to render void the Sheriff's sale of the Debtor's real property. The mortgagee and the purchaser of the real property at the Sheriff's sale oppose the Debtor's motion. As set forth at greater length below, the Court finds that under Federal Rule of Civil Procedure 60(b)(1), the order granting relief from the automatic stay is vacated, and pursuant to 11 U.S.C. § 105(a), the automatic stay is reimposed.

## JURISDICTION

The Court has jurisdiction to review and determine this matter pursuant to 28 U.S.C. §§ 1334 and 157(a), and the Standing Order of Reference issued by the United States District Court for the District of New Jersey on July 23, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (G). The following constitutes this Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.

## STATEMENT OF FACTS

On February 3, 2006, Kathleen J. Ganim ("Debtor"), acting pro se, filed a Chapter 13 petition. The filing of the Chapter 13 petition automatically stayed the foreclosure sale for real property known as 429 Gregory Avenue, Weehawken, New Jersey (the "Property") that was scheduled for February 9, 2006.

The Debtor's Chapter 13 Plan proposed two alternative means for satisfying her debts. The Plan provided for payments of $1,100 per month for 49 months, and alternatively provided for

funding the Plan by a sale or refinance of the Property. Ultimately, on June 29, 2006, an Order

Confirming Plan was entered. That order provided for payments to the Trustee of $3,399.39 for four

(4) months, and then the sum of $1,163.00 for 54 months. The order also provided for a sale or

refinance of the property within twelve (12) months of the Confirmation Hearing or the case would

be dismissed. Thus, it appears that sale of the Property was always an option contemplated by the

Debtor.

Not long after the case was commenced, Washington Mutual Bank, FA ("WaMu") as

servicer for Wachovia Bank, N.A., a National Banking Association, as Trustee for Long Beach

Mortgage Loan Trust 2002-2, filed a motion for relief from stay because the Debtor had not made

post-petition payments. The Debtor and WaMu agreed upon terms for curing the post-petition

default which were embodied in an Order to Cure Post-Petition Default and Providing for Adequate

Protection ("Cure Order") signed by the Court on June 1, 2006.[1] In addition to the payment terms,

the Cure Order provided that if the Debtor failed to make her monthly payments for a period of thirty

(30) days, WaMu could give notice to the Court and the Debtor and obtain stay relief. The order

also contained a provision stating that "any conversion of said bankruptcy to another chapter shall

not impede upon the ability of the secured creditor to continue with its State Court action."

Unfortunately, the Debtor was not able to timely make her post-petition payments to WaMu.

The Debtor attributes her default to the fact that she was laid off in August, 2006. However, from

the WaMu certification of default filed of September 5, 2006, it appears that the default began with

the June, 2006 payment, which was returned for insufficient funds. The Certification of Default

---

[1]The Debtor states that at the outset of the case she did not make her post-petition
mortgage payments because she did not know whom to pay or where to send her payments.

listed four past due payments, inclusive of the September payment, plus late charges and a returned

check fee for a total of $7,773.42, as of September 1, 2006. Because of the amount of the default

and the fact that the Debtor did not object to entry of default, on September 18, 2006, the Court

entered an order granting relief from the automatic stay ("Stay Relief Order").

Freed from the automatic stay, WaMu recommenced its efforts to foreclose on the Property.

A Sheriff's Sale was scheduled for November 16, 2006, but was adjourned to November 30, 2006,

as a consequence of the Debtor's exercising of her statutory right to request an adjournment. She

also exercised her second (and final) statutory right to adjourn the sale, and the Sheriff's Sale was

adjourned to December 14, 2006. On December 14th, the sale went forward, and the Property was

sold to 429 Gregory Associates, LLC for the sum of $434,000.00.

The Debtor's response to the foreclosure sale of the Property was twofold. She first filed

correspondence with the Court on December 20, 2006, requesting withdrawal of her bankruptcy case

so that she could redeem her Property. The Debtor stated that she had a purchaser for the Property

who was offering a sum greater than that paid at the foreclosure sale.

The Debtor apparently rethought her request, because two days later, and now represented

by counsel, the Debtor filed a Motion to Reimpose the Automatic Stay. The Debtor's motion to

reimpose the stay was supported by Barbara Edwards, as the Chapter 7 Trustee ("Trustee"). It

appears that on December 8, 2006, the Debtor filed a Notice of Voluntary Conversion to Chapter

7. Unfortunately, it appears that the United States Trustee did not act on the conversion until

December 18, 2006, when Ms. Edwards was appointed. The Trustee therefore was not apprised of

the Sheriff's Sale until after it occurred.

The Debtor advances several facts which she claims warrant vacating the Stay Relief Order.

4

First, she claims that she did not receive either the WaMu certification of default or the Stay Relief

Order.  Second, she claims that she did not become aware that the stay was vacated and that the

Sheriff's Sale had been scheduled until she received a mailing from an entity that offered to help her

save her home.  Third, she claims that she believed that her voluntary conversion to Chapter 7 would

cause the automatic stay to be reimposed.  Fourth, she claims that her tenant James Fukuda

("Fukuda") has offered to purchase the Property for $630,000.00.  Fukuda submitted a certification

in which he confirms the purchase price and states that he has $180,000.00 available, and will apply

for a $550,000.00 mortgage.  The Debtor states that WaMu is only owed $200,000.00, and thus she

estimates that if the Deed is delivered, she will lose equity of at least $200,000.00.  Finally, the

Debtor states that she believes that the Sheriff's Sale may be void because she claims that she was

not served with the advertisement of the Sheriff's Sale.

Additionally, at the hearing on the Debtor's motion, her counsel proffered that the language

of the Stay Relief Order stating "that the movant may join the debtor and any trustee appointed in

this case as defendants in its foreclosure action(s) irrespective of any conversion to any other chapter

of the Bankruptcy Code," did not clearly state that conversion to another chapter would not stay the

sale.  Accordingly, he argued that the Debtor's misapprehension regarding the existence of the

automatic stay was understandable.

As a factual matter, the Court has difficulty with the credibility of the Debtor's claim that

she was not served with the certification of default or the Stay Relief Order.  WaMu's certification

of service for the certification of default shows service made on the Debtor at 429 Gregory Avenue,

Weehawken, New Jersey.  The Court's certificate of service similarly shows that the Stay Relief

Order was mailed to the Debtor at the aforementioned address.  This is the address listed by the

Debtor on her petition, and she has not submitted any change of address.  Nor does she complain

that she has not received other bankruptcy notices or even other mailings.  In the absence of some

fact demonstrating irregularity in the mail delivery, the Debtor's bare allegation of non-receipt

appears self-serving and not credible.

Moreover, the Debtor's contention regarding her knowledge that relief from the automatic

stay had been granted, is something of a red herring.  By her own statements she plainly knew about

the November 16, 2006 Sheriff's Sale, and after she adjourned it to November 30, 2006, the Debtor

could have acted to reimpose the stay, but did nothing until she filed her voluntary conversion on

December 8, 2006.  The Debtor's mistaken belief that her voluntary conversion of her Chapter 13

case to a Chapter 7 case acted to reimpose the automatic stay has somewhat more substance, since

she was acting pro se.

At oral argument, WaMu argued that the language of the motion to vacate the stay and the

Stay Relief Order which followed were clear in that the debtor could not have reasonably believed

that the Sheriff's Sale would not go forward because the Stay Relief Order did not explicitly state

that conversion will not reimpose the automatic stay.  WaMu also contends that the Sheriff's Sale

was properly conducted and that the alleged inadequacy of the sale price (here the price was well

below fair market value) is insufficient to overturn the sale.

At oral argument, 429 Gregory Associates argued that the Debtor's motions prejudices it in

that it is prevented from completing its purchase.  Furthermore, it argues that the state court is the

proper forum to object to the sale.

Perhaps the most compelling argument made in favor of vacating the Stay Relief Order arises

from the simple fact that the United States Trustee did not appoint the case Trustee until after the

6

Sheriff's Sale occurred.  As Trustee's counsel observed, the United States Trustee's failure to timely

appoint the Trustee meant that the Trustee had no opportunity to seek reimposition of the automatic

stay in order to preserve the value of the Property for creditors.  A review of the Proof of Claim

register reveals that there are several unsecured creditors whose claims approximate $9,783.98.

They will only receive payment if the Chapter 7 Trustee has the opportunity to sell the Property.


## **DISCUSSION**

Counsel for the Debtor grounds his request to vacate the Stay Relief Order and to reimpose

the automatic stay on Federal Rule of Civil Procedure ("Rule") 60(b)(1) and (6).  The Rule provides

in pertinent part that:

> On motion and upon such terms as are just, the court may relieve a
> party or a party's legal representative from a final judgement, order,
> or proceeding for the following reasons: (1) mistake, inadvertence,
> surprise, or excusable neglect; ... (6) any other reason justifying relief
> from the operation of the judgment.

Fed. R. Civ. P. 60(b)(1), 60(b)((6).

The Court does not find that Rule 60(b)(6) is applicable to the matter at hand because the

factual circumstances alleged by the Debtor fall well within the grounds for relief set forth in Rule

60(b)(1).  In Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership et al.,

507 U.S. 380 (1993), the Court examined the meaning of the term "excusable neglect" contained

in Bankruptcy Rule 9006 in light of the meaning ascribed to that term in various other procedural

rules.  With regard to Rule 60, it specifically observed that (b)(1) and (b)(6) are mutually exclusive

and that a party that fails to act timely due to inexcusable neglect may not seek relief from judgment

7

more than a year later under (b)(6).  507 U.S. at 393.  Most importantly for the matter at hand the

Court elaborated that:

> To justify relief under subsection (6), a party must show
> "extraordinary circumstances" suggesting that the party is faultless
> in the delay.  (citations omitted).  If a party is partly to blame for the
> delay, relief must be sought within one year under subsection (1) and
> the party's neglect must be excusable.

507 U.S. at 393.

See also, United States v. Cirami et al., 563 F.2d 26, 32 (2d Cir. 1977)(relief under clause (6) is

available only when the movant acts in a timely fashion and asserts a ground justifying relief that

is not a ground encompassed within any of the first five clauses.); Stradley v. Cortez, 518 F.2d 488,

494 (3d Cir. 1975)(Rule 60(b)(6) is available only in cases evidencing extraordinary circumstances

... and only when the relief sought is based upon "any other reason" than a reason which would

warrant relief under 60(b)(1-5)).

In the instant matter, the Debtor claims that the Stay Relief Order should be vacated because

(i) she was acting pro se until recently, (ii) she did not receive a copy of the Stay Relief Order, (iii)

she didn't understand that conversion of Chapter 13 case to a Chapter 7 case would  not reimpose

the stay, and (iv) she didn't receive notice of the Sheriff's Sale until just prior to the first scheduled

sale date.   Some of the grounds stated by the Debtor simply lack sufficient weight.  For example,

as stated earlier, the Debtor's contention that she did not receive a copy of the Stay Relief Order and

did not receive notice of the Sheriff's Sale appear to the Court to be makeweight arguments, as she

had sufficient notice of the sale to adjourn it twice.  Her strongest contention is that as a pro se

Debtor she did not fully comprehend the consequences of her actions (or nonactions).

Consequently, the circumstances set forth by the Debtor do not describe "extraordinary

8

circumstances, but rather fall within the scope of Rule 60(b)(1) as constituting either "mistake, inadvertence, surprise or excusable neglect."

However, the most compelling fact in favor of using Rule 60(b)(1) to vacate the Stay Relief Order is that the Chapter 7 Trustee was not appointed by the United States Trustee until four days <u>after</u> the Sheriff's Sale occurred. Consequently, the party charged with the responsibility under 11 U.S.C. § 704 to "collect and reduce the money for the property of the estate," had no opportunity to act to preserve the most important asset of the bankruptcy estate. With the Stay Relief Order vacated, and the automatic stay reimposed, the Trustee can be afforded the opportunity to consider Fukuda's offer to purchase the Property and create a fund from which unsecured claims, as well as secured claims can be paid in full. This result fulfills the bankruptcy goal of payment to as many classes of creditors as possible.

A number of courts have recognized that relief under Rule 60(b)(1) is appropriate where court error or inadvertence has cause the need for relief from an order or a deadline. <u>See</u>, <u>Brandon v. Chicago Board of Education</u>, 143 F.3d 293 (7th Cir. 1998)(clerk's mailing of court orders to wrong attorney at wrong address considered under 60(b)(1), but motion to vacate order ultimately denied because not brought within one year of entry); <u>Travelers Indemnity Co. v Stedman, et al.</u>, 925 F. Supp. 345 (E.D. Pa. 1996)(Rule 60(b)(1) applied to correct judicial mistake of fact). The United States Trustee's inadvertent failure to timely appointment the case Trustee certainly falls well within the scope of this case authority.

Vacating the Stay Relief Order results in the stay being revived effective as of September 18, 2006. Consequently the Sheriff's Sale on December 14, 2006 must be considered as void. <u>Maritime Elec. Co., Inc. v. United Jersey Bank</u>, 959 F.2d 1194, 1206 (3d Cir. 1991)(Absent relief

from the stay, judicial actions and proceedings against the debtor are void <u>ab initio</u>); <u>In re Ward</u>, 837

F.2d 124, 126 (3d Cir. 1988)(Sheriff's sale conducted in violation of the stay is void and without

effect).

Additionally, under <u>In re Wedgewood Realty Group, Ltd.</u>, 878 F.2d 693, 702 (3d Cir. 1989),

the Court has the power to reimpose the stay under authority of 11 U.S.C. § 105(a).  To do so the

Court must find that the following grounds for injunctive relief have been met: substantial likelihood

of success on the merits, irreparable harm to the movant, harm to the movant outweighs harm to the

nonmovant, and injunctive relief does not violate the public interest.  <u>Id.</u>, at 700-701.  All of these

criteria are met in this case.  A proposed purchaser stands ready to make an offer for the Property

that will pay all claims.  It is also likely that there will be funds remaining which can be paid to the

Debtor.  Accordingly, she will be irreparably injured if the stay is not reimposed.  Neither WaMu

nor 429 Gregory Associates, LLC will be measurably harmed.  WaMu will receive full payment

from the sale by the Trustee.  The funds paid to the Sheriff by 429 Gregory Associates, LLC will

be refunded.  Concededly, 429 Gregory Associates, LLC will not realize its anticipated profit from

resale of the Property. However,  it is well understood that purchasing property at foreclosure sales

is a risky investment opportunity.  Among the risks faced is the prospect that the purchased property

may be redeemed.  In this instance, sale of the Property by the Chapter 7 Trustee is not measurably

different from redemption.  Finally,  the public interest is served rather than violated.  Creditors will

be paid, and the Debtor will likely  receive funds as well.  Moreover, making the reimposition of the

stay effective retroactively is essential to afford the relief granted to the Debtor under Rule 60(b)(1).

10

### <u>CONCLUSION</u>

Pursuant to Rule 60(b)(1) the Stay Relief Order may be vacated.  As a consequence, the stay must be viewed as in effect when the Sheriff's Sale occurred.  Consequently, the Sheriff's Sale is void as in violation of the stay imposed by 11 U.S.C. § 362.  Additionally, under 11 U.S.C. § 105(a), this Court has the authority to reimpose the stay retroactive to September 18, 2006, the date the Stay Relief Order was entered.